Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| OSVALDO WALKER ISAAC<br><br>Parte Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Parte Recurrida | TA2025RA00291 | *Revisión Judicial de Decisión Administrativa* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso núm.: B292-1008<br><br>Sobre: Evaluación de Programa de Pase Extendido con monitoreo electrónico y Programa Religiosos y Seculares |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.

Trigo Ferraiuoli, jueza ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de octubre de 2025.

El Sr. Osvaldo Walker Isaac (Walker Isaac o recurrente), quien se encuentra bajo custodia del Departamento de Corrección y Rehabilitación en la Institución Ponce Principal, solicita que revisemos la *Resolución* emitida el 7 de abril de 2025, notificada el 13 de agosto de 2025, por la División de Programas de Desvío y Comunitario del Departamento de Corrección y Rehabilitación (DCR). La misma denegó la solicitud del recurrente para que fuese evaluado para el programa de pase extendido con monitoreo electrónico por no cumplir con los criterios de elegibilidad.

Por los fundamentos que expondremos a continuación, confirmamos la determinación recurrida.

**I.**

El 30 de mayo de 2003, Walker Isaac fue sentenciado a ciento cuarenta y ocho años (148) de cárcel por infracción al delito de

asesinato en primer grado[1] e infracción a los artículos 5.04 y 5.15 de la Ley de Armas[2].

El 12 de noviembre de 2024, el caso de Walker Isaac fue referido para el Programa de Pase Extendido con Monitoreo Electrónico. El 26 de febrero de 2025, la Coordinadora del programa atendió la solicitud del recurrente y emitió la *Respuesta de la Planilla de Información Necesaria para Evaluar Candidatos para el Programa Religiosos y Seculares*, en la que denegó la solicitud del recurrente por no cumplir con los criterios de elegibilidad. En primer lugar, la Coordinadora basó su determinación en que, se evaluaba conforme a la fecha de los hechos, por lo que en virtud de la Ley Núm. 49 del 26 de mayo de 1995, Walker Isaac no cualificaba porque el delito cometido por éste se encuentra entre los delitos excluyentes para beneficiarse del programa. Asimismo, la Coordinadora añadió que, desde la fecha de los hechos al momento de evaluar su caso, el recurrente no cualificaba para el beneficio, ya que según el Artículo 16 del *Plan de Reorganización del DCR #2* del 21 de noviembre de 2011, según enmendado, y el Artículo VIII en el *Reglamento del Programa Integral de Reinserción Comunitaria Núm. 9488* del 9 de agosto de 2023 (Reglamento 9488) el delito de asesinato en primer grado está excluido.

En desacuerdo, el 6 de marzo de 2025, Walker Isaac presentó una *Solicitud de Reconsideración; Sobre Programas Religiosos y Seculares.* Señaló que la Ley Núm. 49-1995 fue derogada por el Plan de Reorganización del DCR #2 del 21 de noviembre de 2011, y que, en virtud del Plan, se creó el Reglamento del Programa Integral de Reinserción Comunitaria. En síntesis, alegó que cumple con los requisitos para beneficiarse del programa, pues ya cumplió el 20% de su sentencia.

---

[1] Artículo 83 del Código Penal de 1974. Ley Núm. 115-1974.
[2] Ley Núm. 404-2000.

El 7 de abril de 2025, la Jefa de Programas de Desvío y Comunitarios, emitió la *Resolución* recurrida, en la que concluyó que el Walker Isaac no cumplía con los criterios de elegibilidad para el programa, por lo que coincidió con la determinación emitida por la Coordinadora del 26 de febrero de 2025.

Inconforme, Walker Isaac acude ante nos mediante recurso de revisión judicial y formuló el siguiente señalamiento de error:

> Err[ó] el D.C.R. por conducto de la División de Programas Religiosos y Seculares al denegar el privilegio esto a pesar de que este peticionario cumple con los requisitos conferidos en el manual 9488 y para denegar el mismo solo se basa en la Ley 59 del (sic) 1995, por lo que con dicha acción solo se limita el proceso de rehabilitación de este peticionario.

Con el fin de lograr el más eficiente despacho del asunto presentado ante nuestra consideración, prescindiremos de solicitar ulteriores escritos conforme nos faculta la Regla 7(B)(5) del Reglamento de este Foro[3].

## II.

### A.

Es norma firmemente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones de los organismos administrativos. Ello, dado que las agencias administrativas cuentan con vasta experiencia y conocimiento especializado en cuanto a los asuntos que les han sido encomendados.[4]

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será

---

[3] Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 14-15, 215 DPR __ (2025).

[4] *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021), citando a *OCS v. Universal*, 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).

respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla.[5]

En cuanto a las determinaciones de hecho que realiza una agencia, éstas serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo.[6] Por evidencia sustancial se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".[7] Por lo tanto, la parte afectada por la decisión administrativa deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial.[8]

Ahora bien, respecto a las conclusiones de derecho de las decisiones de las agencias administrativas, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos por el tribunal.[9]

Al respecto, recientemente, en *Vázquez v. Consejo de Titulares*[10], el Tribunal Supremo hizo eco de la decisión del foro federal en el caso *Loper Bright Enterprises v. Raimondo*[11], y determinó que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. En *Vázquez,* el Tribunal Supremo enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, *supra.* Puntualizó que, al enfrentarse a un

---

[5] *Transp. Sonell, LLC v. Jta. Subastas ACT,* 214 DPR ___ (2024), 2024 TSPR 82; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).
[6] Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675.
[7] *Rolón Martínez v. Superintendente*, 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Otero v. Toyota*, 163 DPR 716, 728-729 (2005).
[8] *Otero v. Toyota*, supra, pág. 728.
[9] Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675.
[10] 216 DPR ___ (2025), 2025 TSPR 56 (resuelto el 21 de mayo de 2025).
[11] ___ U.S. ___, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024).

recurso de revisión judicial proveniente de una agencia administrativa, **será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos**. Con ello, nuestro Tribunal Supremo pautó el fin de la deferencia absoluta a las apreciaciones de derecho arribadas por las agencias administrativas.[12] En fin, delimitó que la interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. Ello, como mecanismo interpretativo del poder judicial.[13]

Por consiguiente, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales.[14]

**B.**

La Ley Núm. 49 de 1995[15], (Ley 49-1995), enmendó la Ley Orgánica de la Administración de Corrección, Ley Núm. 116 de 1974, a los fines de ***establecer unos criterios básicos*** *para los programas de desvío o tratamiento y rehabilitación creados y operados por la Administración de Corrección*, al igual para los programas de libertad a prueba, la libertad bajo palabra y la pena de restricción domiciliaria. (Énfasis nuestro). Surge de la Exposición

---

[12] *Vázquez v. Consejo de Titulares*, supra.
[13] *Íd.*
[14] *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 744-745 (2012).
[15] 4 LPRA 1112 *et seq.*

de Motivos de la ley citada que la política pública en cuanto a los criterios excluyentes para el conjunto de los referidos programas debía ser establecido mediante legislación. Es decir, que era tarea del Legislador, en oposición a la agencia administrativa, determinar, entre otros, cuáles confinados podrían cualificar para recibir tales programas.

En el Art. 10-A(1) de la Ley 49-1995 se dispuso, en lo pertinente, que no serían elegibles para participar en los programas de desvío o tratamiento y rehabilitación, ni el en el Programa de Hogares de Adaptación Social, toda persona convicta que estuviera cumpliendo sentencia por asesinato.

Posteriormente, también fue aprobado el Plan de Reorganización Núm. 2 de 2011, conocido como el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*, que, en lo concerniente, estableció como política pública del Gobierno de Puerto Rico:

> [...] la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incurso en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad.

> Art. 2, Plan 2-2011.

A tenor con lo anterior, el Artículo 16 del Plan de Reorganización Núm. 2-2011, en lo aquí pertinente, lee como sigue:

> Artículo 16. Programas de Desvío.

> El Secretario **establecerá mediante reglamento** los objetivos de cada programa de desvío, cómo habrán de operar, los criterios y condiciones para la concesión de dicho privilegio, así como también los criterios, condiciones y procesos que habrá de seguirse para la revocación del privilegio y administrará los programas de desvío **donde las personas convictas** puedan cumplir parte de su sentencia fuera de la institución correccional. La opinión de la víctima habrá de tomarse en consideración como uno de los criterios para

conceder el privilegio de ubicar a un miembro de la población correccional en un programa de desvío.

No serán elegibles para participar en los programas de desvío establecidos por el Departamento las siguientes personas:

**a) toda persona convicta** que **esté cumpliendo sentencia por los siguientes delitos**:

1) Producción, posesión y distribución de pornografía y la utilización de un menor para la pornografía infantil;

[........]

**(4) toda persona convicta por delito grave de primer grado**.

b) toda persona convicta por la comisión de cualquier delito grave **que no sea de los incluidos en el inciso (a) de este Artículo, hasta que haya cumplido por lo menos un veinte (20) por ciento de la sentencia de reclusión en una institución correccional**, excluyendo toda clase de bonificaciones y se determine por el Secretario que no representa una amenaza para la comunidad;

c) toda persona convicta por delito grave a la cual se le haya hecho una determinación de reincidencia agravada o reincidencia habitual de conformidad a las disposiciones del Código Penal de Puerto Rico de 2004.... (Énfasis nuestro).

Conforme a ello, a su vez, fue aprobado el *Reglamento del Programa Integral de Reinserción Comunitaria*, Reglamento Núm. 9242 de 11 de diciembre de 2020, (Reglamento Núm. 9242). Este fue derogado por el *Reglamento del Programa Integral de Reinserción Comunitaria*, Reglamento Núm. 9488 del 9 de agosto de 2023. En sus Arts. VI y VII este reglamento establece los criterios generales y específicos de elegibilidad para los miembros de la población correccional que interesen participar en programas de desvío. Pertinente a la presente causa, el Art. VIII del reglamento citado establece las siguientes exclusiones:

No serán elegibles para participar de los Programas de Desvío establecidos por el Departamento las siguientes personas:

1. Toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:

a)...

b)...

c)...

d) Toda persona convicta por delito grave de primer grado.

Con el marco jurídico que antecede, atenderemos el señalamiento de error del recurrente.

**III.**

En síntesis, Walker Isaac plantea que el DCR erró al denegar su solicitud para que fuese evaluado para el programa de pase extendido con monitoreo electrónico. Alega que la agencia incidió al solo tomar en consideración la Ley Núm. 49-1995, la cual quedó derogada por el Plan de Reorganización de 2011. No le asiste la razón.

Conforme surge del expediente apelativo ante nuestra consideración, el recurrente fue sentenciado el 30 de mayo de 2003 por el delito de asesinato en primer grado e infracción a los artículos 5.04 y 5.15 de la Ley de Armas. Por la comisión de tales delitos, se le impuso una sentencia de 148 años. Su caso fue referido para evaluación del programa de pase extendido y desvío con monitoreo electrónico. En la respuesta emitida por la Coordinadora del Programa de Desvíos, ésta consignó que el recurrente no cualificaba para el beneficio en virtud de la Ley 49-1995, así como tampoco cualificaba bajo el Plan de Reorganización de 2011 y el Reglamento Núm. 9488. Conforme surge expresamente en las leyes y reglamentos antes mencionados, no será elegible para el beneficio aquella persona convicta por delito grave de primer grado. En vista de lo anterior, el delito de asesinato en primer grado está excluido, por lo que el recurrente no cualifica para el programa de desvío. Ante la denegatoria, Walker Isaac hizo uso de su derecho a solicitar reconsideración del dictamen para que fuese evaluado nuevamente.

Así las cosas, evaluada la solicitud de reconsideración del recurrente, la agencia recurrida denegó la misma. En su

determinación, la agencia concluyó específicamente que, en virtud del inciso 1-d del Artículo VIII del Reglamento 9488, Walker Isaac no cumplía con los criterios de elegibilidad específicos que dicho cuerpo reglamentario exige para el programa de desvió solicitado.

Además, respecto al planteamiento del recurrente de que cumple con los requisitos para cualificar para el programa de desvío por haber cumplido el 20% de su sentencia, tampoco le asiste la razón, pues dicho requisito aplica a las personas convictas por delitos **que no sean** los incluidos en el inciso (a) del Articulo VIII. Ante el hecho de que el delito grave de primer grado está incluido en la exclusión consignada en el inciso (a), su planteamiento carece de méritos.

Así, evaluado el recurso y documentos presentados, no hallamos indicio que justifique nuestra intervención con la determinación recurrida. El DCR tomó en cuenta la reglamentación aplicable. Por tanto, concluimos que el recurrente no demostró que la agencia recurrida actuare de forma arbitraria, caprichosa o ilegal al denegar su solicitud.

**IV.**

Por los fundamentos que anteceden, confirmamos la *Resolución* recurrida.

Notifíquese.

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones